LEVI WEINSTEIN and others *v.* THE COMMISSIONERS OF THE CITY OF NEWBERN.

The Commissioners of the city of Newbern have the power under their amended charter to levy and collect for current expenses, taxes to the amount of $6,000, observing in such collection the equation and limitation prescribed in the Constitution. But they have no authority to collect taxes to pay "new debts," unless the proposition is submitted to the voters of the town, even though commanded by *mandamus*.

This was an application for an INJUNCTION by the plaintiffs to restrain the defendants from collecting certain taxes, heard before *Clarke, J.,* in the county of CRAVEN, at Chambers, June 2d, 1874.

His Honor vacated the first restraining order granted, whereupon the plaintiffs appealed.

The facts are fully set out in the opinion of the Court.

*Smith & Strong* and *Haughton,* for appellants.
*Seymour* and *Pou,* contra.

BYNUM, J. The amendment to the charter of the city of Newbern, ratified the 6th of April, 1871, limiting the taxation for all purposes to $6,000, and for other purposes, if valid, might defeat the objects of the charter itself by putting an end to all city government, for the want of means for its due support and efficient administration. We express no opinion upon its validity, because the case turns upon the provisions of the Constitution.

Article VII, sec. 7, of the Constitution provides that " no county, city, town or other municipal corporation, shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of a majority of the qualified voters therein."

If the defendants had demurred to the complaint, which alleges only the violation of the amendment limiting the taxation to $6,000 for all purposes, and does not allege that the tax levied is more than is required for the current expenses of the city, the question would have been presented, whether that amendment is not null and void, as much so as a similar act would be, limiting the annual State taxation.   But the answer has supplied the sufficiency of the complaint.   The answer, in substance, admits the allegations of the plaintiffs, and then proceeds to state the amount and purposes of the tax levied; from which it appears that the city government has levied for current expenses one-half of one *per cent.* upon real property, which is estimated to yield $4,000, and taxes upon licenses, which will aggregate $2,000 one-half of which is appropriated to current expenses and the other to the payment of debts contracted prior to April, 1871, and one dollar upon the poll, estimated at $200, which is not specifically appropriated.

The answer further discloses the fact that additional taxes have been levied upon the taxable property of the city, amounting to over $6,000 for the purpose of paying debts contracted prior to 1871, and to discharge certain sums commanded to be paid by virtue of sundry writs of *mandamus*, issued against the city.

It thus sufficiently appears that the current expenses of the city are about the sum of $6,000.   Unquestionably the city has the right to levy and collect that sum to defray the necessary current expenses of the city government.   In the collection of that tax the equation and limitation, prescribed by the Constitution, are to be observed.

The residue of the taxes, assessed for the payment of debts contracted prior to the 6th of April, 1871, as the case now discloses the facts, cannot be collected, nor can they be collected to meet the requirements of the writs of *mandamus*.

The answer sets forth that these debts were contracted prior to 1871.   If it had appeared that they accrued prior to the

adoption of the Constitution, that would have constituted them what is called " old debts," and for their payment the city has the right to levy and collect taxes without regard to either equation or limitation.

Whether this indebtedness was of that character, was a fact peculiarly within the knowledge of the defendants; and their answer, which, by the rules of pleading, is to be taken most strongly against them, having failed to show the fact, this Court cannot intend that the debts were created prior to the adoption of the Constitution. We are bound, then, to assume that they were made since, and are what are called new debts. Their payment, then, is to be governed by the before recited 7th section of the 7th article of the Constitution—that is, the tax cannot be levied or collected, unless by a vote of the qualified voters in the city.

Doubtless this wise provision of the Constitution was intended to prohibit these corporations from burdening the citizens with debts contracted without their knowledge or consent. It therefore, by this action, requires these corporations hereafter, "*pay as they go*," unless it is otherwise directed by the tax-payers at the ballot-box. ·

But suppose these corporations do not pay as they go, but allow deficiencies to accumulate from year to year by collecting annually a less tax than is sufficient to meet the current expenses. This they call a "floating debt," and such may be the *character* of the debt in our case. Is this not "contracting a debt" in the sense of the before quoted section of the Constitution, and therefore prohibited, unless allowed by the vote of the tax payers? If by inadvertence or other unexpected contingency, the tax of one year should fall short of defraying the necessary current expenses, such deficit could hardly fall within the prohibition, and it would be within the power and it would be the duty of the corporation to cover the deficiency by the assessment of the succeeding year. But when these municipal bodies, instead of pursuing this course, intentionally allow and encourage these annual accretions of debt, until they become "a

debt" in the sense of the law, the interesting question is presented, whether this is not the very evil provided against by the Constitution, and therefore, that this contracted debt is void, unless it shall be assumed by a popular vote. If these debts may be contracted by indirection and be valid, it would be difficult to see the use of the prohibition in the Constitution. How it would be, we do not decide, and we throw out the suggestion because this may be a debt of that character, and as such must be dealt with by the corporation and the tax payers.

We have said that no tax can be levied and collected to pay the debt incurred prior to 1871, because it does not appear to be an "old debt," and, for the same reason, taxes cannot be assessed for the payment of the debts which are called for by the writs of *mandamus.* It does not appear that they were contracted prior to 1868, the date of the Constitution. The fact that the corporation, by neglect or design, has allowed these mandatory writs to issue, cannot have the effect of dispensing with a constitutional provision. That is a matter between debtor and creditor, not now before us. Our duty is to enforce the law as it is written.

It was error in his Honor to dissolved the injunction altogether, and therefore his judgment must be reversed and the injunction continued as to the assessment and collection of all taxes in excess of $6,000, the estimated amount of the current expenses. In the assessment of that tax the city corporation is to be governed by the rule of equation and limitation prescribed by law.

Judgment reversed in part, and the cause remanded.

PER CURIAM.                    Judgment accordingly.