D. E. YOUNG and others v. THE TOWN OF HENDERSON.

*Practice -- Judgment Against Municipal Corporation -- Impeachment of -- Taxation by City or Town -- Extending Streets Thereof -- Charter of Town of Henderson.*

1. The expense of extending streets is of the class of necessary expenses of a City or Town, of which the corporate authorities are the sole judges.

2. Under the provisions of the charter of the Town of Henderson (Private Laws, 1868–'9, ch. 79, § 22,) the Town can incur no debt without the authority of the General Assembly previously obtained.

3. A judgment regularly obtained against a Municipal Corporation can not be impeached in an action brought by citizens and tax-payers to restrain the Corporation from collecting a tax levied to pay the judgment, there being no suggestion of fraud.

4. In such case the plaintiffs should have interpleaded in the original proceedings and alleged the want of authority in the Corporation to contract the debt, upon which judgment was obtained.

5 While the *Constitution* fixes no limit to the *amount* of taxation which a City or Town may impose, it does require that the rate of taxation shall be uniform on *all* property and that the proportion fixed between the tax on property and on polls shall be observed.

6. A tax levied by a town on the 24th May, 1876, "on each $100 of merchandise purchased for twelve months prior to the 1st May, 1876" is retroactive and forbidden by Art. 1, § 32, of the Constitution.

(*Wilson* v. *City of Charlotte,* 74 N. C. 748; *Cobb* v. *Elizabeth City,* 75 N. C. 1; *Tucker* v. *City of Raleigh, Ibid,* 267; *French* v. *City of Wilmington, Ibid,* 477, and *Weinstein* v. *City of Newbern,* 71 N. C. 535, cited and approved.)

CIVIL ACTION, tried at a Special Term of GRANVILLE Superior Court, (held in August, 1876,) before *Seymour, J.*

The Commissioners of the Town of Henderson caused a street to be opened in said Town and for that purpose condemned a portion of the land belonging to one George B. Reavis. A committee of appraisers reported that the value

of the land so condemned was $50, which was tendered to and refused by said Reavis. The amount was then deposited in the office of the Clerk of said Court for the use of said Reavis, who appealed from the action of the Commissioners to the Superior Court. At Fall Term, 1873, the case was referred by consent to John W. Hays, Esq., and in accordance with his report filed at Spring Term, 1874, a judgment was rendered in favor of said Reavis and against said Town for $450. At Spring Term, 1875, upon petition of said Reavis a peremptory *mandamus* was granted commanding the Commissioners of said Town to levy and collect a tax for the purpose of paying said $450 and interest and costs, and thereupon said Commissioners appointed a Board of three Assessors to value the real estate in said Town. On the 24th of May, 1876, upon such valuation, a tax of 75 cents on the $100 worth of real estate was levied, which was greater in amount than that levied by the Township Trustees on the same property. They also levied a tax of 25 cents on each $100 worth of merchandise purchased for twelve months prior to May 1st, 1876, and $2.00 on the poll.

On the 8th of June, 1876, the plaintiffs suing in their own behalf and also in behalf of other citizens and tax-payers of said town, obtained from His Honor, Judge Watts, an order restraining the defendants from proceeding in the collection of the taxes levied as aforesaid.

At the August Term of the Court, His Honor, Judge Seymour, on motion of defendants, vacated the restraining order of Judge Watts, except as to the tax of 75 cents on the $100 worth of real estate, and as to that ordered that the defendants collect a tax of 75 cents on the $100 as valued by the Board of Township Trustees. From this judgment the plaintiffs appealed.

*Messrs. G. Badger Harris* and *Smith & Strong*, for the plaintiffs.

*Messrs. Busbee & Busbee* and *W. H. Young,* for the defendants.

RODMAN, J.   The debt to Reavis was one which the Commissioners, independent of any statute to the contrary, had power to contract.   The expense of extending a street is of the class of necessary expenses, and being of that class, the corporate authorities alone were entitled to judge whether it was actually necessary or not.   *Wilson* v. *City of Charlotte,* 74 N. C. 748, and cases there cited ; *Tucker* v. *City of Raleigh,* 75 N. C. 267.   But the charter of the town which is found in the Private Acts of 1868–'9, ch. 79, § 22, enacts, " That among the powers hereby conferred on the Commissioners, they may borrow money, pledge the credit of the town and contract debts for the improvement of the town ; *Provided nevertheless,* that these powers shall be exercised strictly in accordance with Art. 7, § 7, of the Constitution of North Carolina, and *after the consent of the General Assembly* of North Carolina first had and obtained in the manner prescribed in Art. 2, § 16 of the same Constitution."   In effect this section provides that the Town shall incur no debt without being previously authorized thereto by the General Assembly.   But here is a debt which has been contracted, so far as affirmatively appears, without such consent, and a judgment and execution have been obtained upon it.   The want of such authority might have been pleaded by Reavis as a bar to the proceedings to condemn his land for the street.

Perhaps also it would have been available to the corporation as a defence to the action of Reavis against them upon their giving up the land condemned.   Any tax payer of the corporation would have been allowed to intervene in the proceedings against Reavis, on the ground that the corporate authorities were contracting a debt without the authority required by the charter.   They might perhaps also have intervened in the action of Reavis against the Town,

upon the ground that the corporate authorities were acting unfaithfully and fraudulently in defending the action. But it is a different question whether the tax payers can *now* interpose to prevent the execution of the judgment by the levy of *a legal tax,* upon the ground that the improvement was unauthorized and the judgment was erroneous.

We are of opinion that the plaintiffs are estopped from denying the debt to Reavis. It is *res adjudicata,* which cannot be collaterally impeached except for fraud, which is not alleged. The judgment for the debt so long as it stands binds the corporation and all its members and it can not be collaterally impeached by any of them. We must assume that the debt was legally due. It was the duty of the corporate authorities to pay it without waiting for an execution. The effect of the *mandamus* was to enforce this duty. But it required the Commissioners to pay the debt by a legal tax and not by an illegal one. The question then is, was the tax which they actually levied and the collection of which is sought to be enjoined a legal or an illegal one? In obedience as they supposed to the *mandamus,* on the 26th May, 1876, they levied a tax of 75 cents on each $100 worth of real estate in the town; of 25 cents on each $100 worth of merchandise purchased for twelve months prior to the first day of May, 1876; and $2.00 on each taxable poll. No *ad valorem* tax is levied on personal property owned and possessed within the town on any fixed day.

It is settled by several decisions of this Court, that while the Constitution fixes no limit to the *amount* of taxation which the corporate authorities of a town or city may impose, it does require that the rate of taxation shall be uniform on all property in the town and that the proportion fixed by the Constitution between the tax on property and on polls shall be observed. *French* v. *City of Wilmington,* 75 N. C. 477; *Cobb* v. *Corporation of Elizabeth City,* 1, *Ibid Weinstein* v. *Com'rs. of Newbern,* 71 N. C. 535.

Section 34 of the charter enacts that the Commissioners may annually levy and collect the following taxes:

1. On real estate not over $1 on the $100 in value.

2. On resident polls not exceeding $2.00.

3. On every $100 worth of goods purchased, &c., not exceeding 50 cents.

4. On dogs, &c.

5. On swine and goats, &c.

It is obvious that these provisions of the charter and the tax levy made in accordance with them, ignore and violate the provisions of the Constitution.

All property is not taxed *ad valorem.* Personal property in possession is not taxed at all. The proportion of tax between property and polls is not observed. The tax on purchases by merchants is retrospective, which is forbidden by Art. 1, § 32 of the Constitution. It is impossible to maintain that any part of the tax levy is good. The illegality pervades it all. The plaintiffs are entitled upon the pleadings to a perpetual injunction against the collection of the taxes complained of. The corporate authorities can proceed to levy a legal tax to pay the debt. Judgment reversed and perpetual injunction ordered.

Let this opinion be certified.

PER CURIAM.                                    Judgment reversed.