SEAWELL, J., took no part in the consideration or decision of this case.
Action for recovery of ad valorem taxes alleged to have been assessed illegally, and paid under protest.
The parties waived a trial by jury and by consent agreed that court should hear the evidence, find the facts and render judgment in accordance therewith.
The court made findings of fact substantially as follows: On 30 August, 1936, the defendant Clay County, through its duly authorized board of commissioners, levied a tax for the year 1936 at the rate of $1.90 on the $100 property valuation, made up of sixteen separate items. The purpose and amount of the first twelve aggregating sixty-seven cents are involved in this action. They are as follows: (1) County commissioners' pay, expense, and board, county courthouse and grounds, and county attorney's fees, fivecents; (2) tax listing expense, four cents; (3) expense of holding elections, three cents; (4) sheriff's salary and expense of office, tencents; (5) register of deed's salary and expense of office, five cents; (6) clerk Superior Court, salary and expense of office, five cents; (7) county accountant's salary, five cents; (8) county farm agent's salary, fourcents; (9) upkeep county buildings, courthouse, county home, poor and paupers, and incidental purposes, five cents; (10) holding courts, expense of jail and jail prisoners, fifteen cents; (11) miscellaneous expense of county government not otherwise set forth, two cents; and (12) emergency tax for distribution to each of above funds, four cents.
Plaintiff listed for taxation for said year real and personal property of assessed valuation of $149,397, the tax on which at the above rate of $1.90 amounts to $3,838.55. Prior to the levy and assessment of taxes *Page 701 
for the year 1936, on 30 June, 1936, and in order that it might receive a discount of three per cent of the taxes, allowed for anticipatory payment, plaintiff paid $2,183.16, less discount to the county accountant, who was duly authorized agent of said county. Receipt therefore contains recital that payment is "to apply on its taxes levied by Clay County, North Carolina, for the current year 1936," and that "it is understood that when levy shall have been fixed then an adjustment of any excess or deficiency in this amount shall be made between the parties hereto." After the levy as aforesaid, and on 30 September, 1936, plaintiff paid to proper officer of Clay County the balance of the tax levied upon the property of plaintiff as aforesaid for the year 1936, to with, $655.39. At the time of this payment, plaintiff notified defendants that the payment then being made, and the anticipatory payment, were made under protest for that the twelve items of the tax levy hereinabove specified contravene the provisions of Art. V, sec, 6, of the Constitution of North Carolina, and are void. In the written protest plaintiff sets forth that the first payment having been made prior to the tax levy, there was no opportunity to determine whether or not the levies would be legal or illegal, and, hence, it makes protest at the first opportunity. On 29 October, 1936, pursuant to and in accordance with the terms of C. S., 7880 (194), and C. S., 7979, plaintiff demanded of defendants the refund of $776.86, the amount paid by it on account of alleged excessive, unconstitutional and void levy of fifty-two cents of the sixty-seven cents total of the twelve items in controversy. Plaintiff instituted this action on 5 April, 1937, for the avowed purpose of recovering the sum demanded as above stated upon the grounds specified.
Plaintiff offered evidence tending to show that written notice was served upon defendants to produce evidence of the approval of the Director of Local Government to levy tax under C. S., 1297 (8 3/4), and requested the court to find, upon failure of defendants to produce such evidence, that no such approval was obtained. The court, however, finds as a fact that the board of commissioners of Clay County secured the approval of said director. The court states that this finding is made "solely upon the basis of the presumption of the regularity of the acts of public officers, and such other presumptions as the law raises in such cases." Plaintiff excepts.
None of the taxes contested by the plaintiff were authorized by any vote of the people of Clay County.
Upon these findings of fact, and the contentions of the parties, the court below concluded as matters of law in substance that:
(1) In so far as the taxes assessed and collected exceed fifteen cents on the $100 valuation, the board of commissioners of Clay County purported and undertook to levy such taxes under the provisions of chapter 7 of Public Laws of 1923, of chapter 441 of Public Laws of *Page 702 
1931, and chapter 330 of Public Laws of 1935, as embodied in subdivisions 8 1/2 and 8 3/4 of C. S., 1297, of chapter 41, Public Local Laws of 1935, and of section 6 of chapter 146 of Public Laws of 1927, and that the said statutes are a constitutional exercise of the legislative power under Art. V, sec. 6, and Art. VII, sec. 7, of the Constitution of North Carolina. Exception by plaintiff.
(2) The purpose for which each of the items of the tax levy declared to be valid is a necessary expense within the meaning of Art. VII, sec. 7, of the North Carolina Constitution. Exception by plaintiff as to Item 8.
(3) As to the rate per $100 property valuation for each purpose, the court held that: (a) The levies specified in Items 4, 5, 6 and 11, being made under the provisions of Art. V, sec. 6, of the Constitution, were not for special purposes, and are valid only to the extent of the fifteen cents constitutional limitation, and are invalid to the extent of the excess — seven cents.
(b) The levy specified in Item 12, under the authority of section 6 of chapter 146 of Public Laws of 1927, is invalid for that the statute does not authorize the imposition of the tax.
(c) The levy specified in Item 3, being made under the provisions of subsection 6 of section 1 of chapter 41 of the Public-Local Laws of 1935 authorizing a levy "for election expense two cents," is "for a special purpose" with "special approval" of the General Assembly under the provisions of Art. V, sec. 6, of the Constitution and is valid to the extent of two cents, but invalid as to the one cent excess in rate. Plaintiff excepts to that part of this ruling declaring valid the two cents rate.
(d) The levies specified in Items, 1, 2, 7 and 8, being made under subsections 2, 3, 4 and 5 of section 1 of chapter 41 of Public-Local Laws of 1935, are for special purposes with the special approval of the General Assembly and are within statutory limitations, and within the purview of Art. V, sec. 6, of the Constitution, and valid. Exception by plaintiffs.
(e) The levy specified in Item 9, under the authority of provisions of the acts of Legislature embodied in subsection 8 1/2 of C. S., 1297, is for a special purpose with the special approval of the General Assembly, and is within the statutory limitation, and within the purview of Art. V, sec. 6, of the Constitution, and valid. Exception by plaintiff.
(f) The levy specified in Item 10, under the combined authority of C. S., 1297 (8 3/4), for five cents of the rate, and subsection 1, section 1, chapter 41, Public-Local Laws 1935, for ten cents, is for special purpose and with the special approval of the General Assembly, and is within the statutory limitation and within the purview of Art. V, sec. 6, of the Constitution. Exception by plaintiff. *Page 703 
(4) Pursuant to the above rulings on the validity of rates for tax purposes, the tax assessed against defendant is invalid to the extent of twelve cents on the $100 valuation, or $179.28. Exception by plaintiff and by defendants.
(5) The anticipatory payment 30 June, 1936, was not paid under protest within the meaning of the statute relating thereto, C. S., 7880 (194), but that the payment of 30 September, 1936, was in strict compliance therewith. Exception by plaintiff.
From judgment in accordance with such rulings, the plaintiff and the defendants appealed to the Supreme Court and assign error.
PLAINTIFF'S APPEAL.
The State Constitution provides the fundamental authority for, and prescribes the limitation upon, the levying of county taxes.
Article VII, section 7, reads in part: ". . . No county, city or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein. . . ."
Article V, section 6, provides in part: "The total of the State and county tax on property shall not exceed fifteen cents on the one hundred dollars value of property, except when the county property tax is levied for a special purpose and with the special approval of the General Assembly, which may be done by special or general act. . . ."
The subject of the authority to levy taxes has been discussed in numerous decisions of this Court. The law is well settled. In the case ofGlenn v. Comrs., 201 N.C. 233, 159 S.E. 439, speaking with reference to authoritative decisions interpreting Article V, section 6, and Article VII, section 7, of the Constitution of North Carolina, Stacy, C. J., summarized the law as follows: "1. That within the limitations fixed by Article V, section 6, the county commissioners of the several counties may levy taxes for the necessary expenses of the county without a vote of the people or special legislative approval. (Citing cases.) `Taxation for State and county purposes combined cannot exceed the constitutional limitation for their necessary expenses and new debts. . . . If what are often miscalled the "necessary expenses" of a county exceed the limitation prescribed by law, the necessity cannot justify the violation of the Constitution.'French v. Comrs., 74 N.C. 692.
"2. That for special purposes and with the special approval of the General Assembly, the county commissioners of the several counties *Page 704 
may exceed the limitations of Article V, section 6, without a vote of the people; provided, the special purposes so approved by the General Assembly are for the necessary expenses of the county. (Citing cases.) . . . `Such "special purposes" must be of the ordinary purposes of the county, such as that to build a courthouse, a public jail, or an important bridge, as to which it may be deemed necessary to create a special fund.' Merrimon, J., in Jones v. Comrs., 107 N.C. 264.
"3. That for purposes other than necessary expenses, whether special or other, taxes may not be levied by the county commissioners of any county either within or in excess of the limitations fixed by Article V, section 6, except by a vote of the people under special legislative authority. (Citing case.) (See, also, Palmer v. Haywood County, 212 N.C. 284,193 S.E. 668; Sing v. Charlotte, ante, 60, 195 S.E. 271.)
"4. That a tax `to supplement the general county fund' (R. R. v. Reid,187 N.C. 320, 121 S.E. 534), or `to provide for any deficiency in the necessary expenses and revenue of said respective counties' (R. R. v.Comrs., 178 N.C. 449, 101 S.E. 91), or `for the purpose of taking up a note in bank by the predecessor board and other current expenses' (R. R. v.Cherokee County, 177 N.C. 86, 97 S.E. 758), or to meet `the current expenses of said county in said years' (Williams v. Comrs., 119 N.C. 520,26 S.E. 150), or `to borrow money for the necessary expenses of the county and provide for its payment' (Bennett v. Comrs., 173 N.C. 625,92 S.E. 603), is not for a special purpose within the meaning of the Constitution. . . . "
What are necessary expenses is a question for judicial determination. The decisions in this State uniformly so hold. The courts determine what class of expenditures made or to be made by a county come within the definition of a necessary expense. The governing authorities of the county are vested with the power to determine when they are needed. Sing v.Charlotte, supra, and cases cited.
Likewise, what is a "special purpose" within the meaning of Article V, section 6, of the Constitution is a matter for judicial, rather than legislative, determination. In Glenn v. Comrs., supra, it is said: "As a `special purpose' for which an unlimited tax may be levied with the special approval of the General Assembly and without a vote of the people must also be a `necessary expense' of the county, which latter includes both law and fact, and, as used in the Constitution and municipal resolutions is a matter for judicial, rather than legislative, determination — it follows that what constitutes a special purpose within the meaning of the Constitution must ultimately be decided by the courts."
In the case in hand it is pertinent to note there is no levy for general county purposes, and that the court below treated items 4, 5, 6 and 11 as for general purposes and limited the levy to the fifteen cents constitutional limitation, and declared the excess invalid and unconstitutional. *Page 705 
Hence, each of the items now challenged is levied as for a special purpose.
Plaintiff challenges on this appeal the constitutionality and validity of the tax levy of Clay County for the year 1936 only as to these items for these purposes (for convenience numbered as they appear in tax levy): (1) Commissioners' pay, expense and board, courthouse and grounds, and county attorney's fees; (2) tax listing expense; (3) expense of holding elections; (7) county accountant's salary; (8) county farm agent's salary; (9) upkeep county buildings, courthouse, county home, poor and paupers, and incidental purposes; (10) holding courts, expense of jail and jail prisoners.
Applying the principles hereinbefore stated to the controverted items of the tax levy these questions arise: (1) Which, if any, are for purposes, constitutional and unconstitutional, valid and invalid, inseparably combined? (2) Which, if any, lack special approval of the General Assembly? (3) Which, if any, are not for necessary expenses within the meaning of Article VII, section 7, of the Constitution? (4) Which, if any, are for special purposes within the meaning of Article V, section 6, of the Constitution?
Questions 1 and 2, Items 1 and 9: A statute may be constitutional in part, and in part unconstitutional. The general rule is that if a statute contains invalid or unconstitutional provisions, the part which is unaffected by those provisions, or which can stand without them, must remain. If the valid and invalid are separable, only the latter may be disregarded. R. R. v. Reid, supra. But in the levy of taxes if the board of commissioners combines in a particular item both general and special expenses beyond the constitutional limitation, that item must fall to the extent it exceeds that limitation. Or, if the board combines in a particular item the expenses of both a special and an unnecessary expense, that item must fall in its entirety. This subject has been before the court several times. Boards of commissioners have been permitted to amend their records to speak the truth in cases where levies have been made for general and special purposes separately but recorded as a unit in an amount exceeding the constitutional limitation. However, if the record correctly records the levy as actually made, the board has no power to amend. R. R.v. Reid, supra; R. R. v. Forbes, 188 N.C. 151, 124 S.E. 132; R. R. v.Cherokee, 194 N.C. 781, 140 S.E. 748; R. R. v. Cherokee, 195 N.C. 756,143 S.E. 467; R. R. v. Lenoir County, 200 N.C. 494, 157 S.E. 610.
The board of commissioners of Clay County is a party to the present action. In answer filed it is not contended that an error has been committed in designating the purposes covered by the several items, or in combining the purposes in the separate items: As to Item 1: No special legislative approval is shown for attorney's fees. What part of this *Page 706 
item is to cover that expense the record does not disclose. This brings the entire item into confusion as a special purpose, and renders it void. However, all the expenses set forth therein are general. The board of county commissioners is the governing and tax levying authority. Its functions are general in every aspect, and the expenses of the board are constantly recurring. While the expense of building of courthouse may be special, the expense of running it after it is built is general. While the purchase of the courthouse grounds may be special, the care of the grounds is a general expense. Therefore, each of the purposes included in this item is a general expense and comes within the limitation of Article V, section 6, of the Constitution.
It will be noted in Item 9 that "incidental" purposes are commingled with other purposes therein included. It does not appear what the incidental purposes are, whether necessary or unnecessary expenses, or whether expenses for general or special purposes. Nor does it appear what part of the levy is for "incidental purposes." It may be all or any part. Manifestly, it cannot be recognized as a "special purpose." Thus the inclusion of it condemns the entire item. The levy is indivisible and void.R. R. v. Reid, supra.
Question 3. Item 8: Of the questions raised on this appeal plaintiff contends that the county farm agent's salary, Item 8, is not only not a necessary expense, but is not a special purpose. As a necessary expense this is the only item questioned.
In defining "necessary expense," it is said in Henderson v. Wilmington,191 N.C. 269, 132 S.E. 25, "We derive practically no aid from the cases decided in other states. . . . We must rely upon our own decisions." Then, after reviewing numerous cases dealing with the subject of "necessary expense," p. 278, Adams, J., said: "The cases declaring certain expenses to be `necessary' refer to some phase of municipal government. This Court, so far as we are advised, has given no decision to the contrary." Then, on p. 279, continues: "The decisions heretofore rendered by the Court make the test of a `necessary expense' the purpose for which the expense is to be incurred. If the purpose is the maintenance of the public peace or the administration of justice; if it partakes of a governmental nature or purports to be an exercise by the city of a portion of the State's delegated sovereignty; if, in brief, it involves a necessary governmental expense. . . ." Sing v. Charlotte, supra.
We have only to refer to the Constitution to find that agriculture has a place in the fundamental plan and organization of the State government. Article III, section 17, provides: "The General Assembly shall establish a Department of Agriculture, Immigration and Statistics under such regulations as may best promote the agricultural interests of the State. . . ." C. S., 4666. "This simply directs the Legislature *Page 707 
to do so, leaving to it the largest latitude of regulation." Cunningham v.Sprinkle, 124 N.C. 638, 33 S.E. 138. Then, under "Education," Article IX, section 14, provides: "As soon as practicable after the adoption of this Constitution the General Assembly shall establish and maintain, in connection with the University, a department of agriculture. . . ."
In keeping with the constitutional mandate, the General Assembly has created and established a Department of Agriculture and prescribed for it duties and regulations. And among other things, it is provided that: "The boards of commissioners of the several counties have power . . . to cooperate with the State and national departments of agriculture to promote the farmers cooperative demonstration work, and to appropriate such sums as they may agree upon for the purpose." C. S., 1297 (40). "The Commissioner of Agriculture is authorized to conduct cooperative work with the United States Department of Agriculture and the county commissioners in gathering and disseminating information concerning agriculture. . . ." C. S., 4689 (a).
This cooperative work is carried on through the county farm agent, and at the joint expense of national, State and county governments. (Agricultural Extension Work Act. U.S.C.A. Title 7, sections 341348, and amendments.) The work purports to be an exercise by the county of a portion of the State's delegated sovereignty, and may be regarded as a necessary expense. The character of the work is in a special field. The Legislature, having given special approval to the levy, we see no reason why it should not be classified as a special purpose.
Question 4: In addition to Item 8, we are of opinion and hold that the levy for accountant's salary, Item 7, is for a special purpose. The position and duties of county accountant were created under the County Fiscal Control Act, Public Laws 1927, chapter 146. The declared purpose of this act is "to provide a uniform system for all the counties of the State by which the fiscal affairs of the county and subdivisions thereof may be regulated, to the end that accumulated deficits may be made up, and future deficits prevented, either under the provision of this act or under the provisions of any other laws authorizing the funding of debts and deficits, and to the end that every county in the State may balance its budget and carry out its function without incurring deficits." The office of county accountant with prescribed duties was created with this special purpose in view. The duties of county accountant constitute a "governor" by which the speed of the spending motor of county government is regulated. The duties are special in character, and are in addition to the functions of other offices pertaining to the ordinary operation of county government. As to the expenses of the position in Clay County, the Legislature has given special approval, and no good reason appears why it should not be considered a special expense. This is the ground upon which it is challenged. *Page 708 
The purposes of Items 2, 3 and 10, the listing of taxes, holding of elections and holding of courts are general expenses recurring regularly in the ordinary course of and as necessary steps in the orderly operation of county government. Caring for and feeding jail prisoners is a general expense continuous and ever present. Under the well established principles hereinbefore stated, these are not special purposes. Taxes therefor may be levied only within the constitutional limitation. There may be circumstances under which these items would be expenses for special purposes, but such circumstances do not arise in the present case.
It is appropriate to say that counties must live within their income, and budget their general expenses to fit their income. The Constitution prescribes the limitations.
The plaintiff contends that the court erred in ruling that the anticipatory payment was not paid under protest within the meaning of the statute relating thereto. C. S., 7880 (194); C. S., 7979. We think that the ruling is correct and so hold. In order to get the advantage of discount allowed for early payment, plaintiff made payment on 30 June, 1936, under provisions of C. S., 7971 (92), (8). No protest was filed at the time of the payment. Protest on 30 September, 1936, when balance of taxes were paid, is not sufficient.
However, as plaintiff, after demand, brings this action under the provisions of C. S., 7880 (194), it must show strict compliance with the provisions of that statute. Even a substantial compliance is not sufficient.
In R. R. v. Brunswick County, 198 N.C. 549, 152 S.E. 627, speaking to the subject of C. S., 7979, the Court said: "Ordinarily, where an action is authorized by statute, and can be maintained only because of statutory authority, the provisions of the statute must be strictly complied with. A substantial compliance is not sufficient." See, also, R. R. v. Reidsville,109 N.C. 494, 13 S.E. 865; Wilson v. Green, 135 N.C. 343,47 S.E. 469; Blackwell v. Gastonia, 181 N.C. 378, 107 S.E. 218.
The statute limits plaintiff's recovery to the amount paid under protest.
The judgment below, on plaintiff's appeal, modified in accordance with this opinion, is affirmed.
Modified and affirmed.
DEFENDANTS' APPEAL.
Defendants challenge the correctness of the rule applied by the court below in ascertaining the amount which plaintiff is entitled to recover by reason of invalid tax levy. The court held that twelve cents of the levy is invalid, and fixed the amount of recovery by multiplying the total valuation by twelve. Defendants contend that, in view of the fact *Page 709 
that only $655.39 of the total tax assessed was paid under protest, the plaintiff should recover only a proportionate part of amount illegally assessed. The receipt for the anticipatory payment discloses that it was "to apply on its (plaintiff's) taxes levied in Clay County, North Carolina, for the current year 1936." It will not be presumed that the county will make an illegal levy — nor that taxpayer intended to pay tax illegally levied. It is manifest that the taxpayer directed the application of payment. But if not, the record fails to disclose how the county made application. The law with respect to application of payment on debts is clearly established.
The debtor, at the time of making payment, has a right to direct its application. If debtor fails to apply payment, creditor may make application at any time before suit. But if neither debtor nor creditor applies payment, it will be applied to unsecured or most precariously secured debt, or according to intrinsic justice or the equity of the case.Lee v. Manly, 154 N.C. 244, 70 S.E. 385; Stone Co. v. Rich, 160 N.C. 161,75 S.E. 1077; French v. Richardson, 167 N.C. 41, 83 S.E. 31;Supply Co. v. Plumbing Co., 195 N.C. 629, 143 S.E. 248; Dixon v.Osborne, 204 N.C. 480, 168 S.E. 683; Baker v. Sharpe, 205 N.C. 196,170 S.E. 657.
These principles are based upon the existence of a valid debt.
The judgment of the court below on defendant's appeal is
Affirmed.
SEAWELL, J., took no part in the consideration or decision of this case.